Jeannette Marquardt, Plaintiff-Appellee, v. Louis Cernocky, and Clara Cernocky, d/b/a Fox River Picnic Grove, Defendants-Appellants.
Theodore Marquardt, Plaintiff-Appellee, v. Louis Cernocky, and Clara Cernocky, d/b/a Fox River Picnic Grove, Defendants-Appellants.

Gen. Nos. 11,112, 11,113.

Second District, Second Division.

June 16, 1958.

Released for publication July 3, 1958.

Vogel & Vogel, of Chicago, and C. Russell Allen, of Woodstock (L. H. Vogel, C. Russell Allen, and Robert B. Johnstone, of counsel), for appellants.

Joslyn, Parker & Kell, of Woodstock (V. E. Kell, and Charles S. Parker, of counsel), for appellees.

JUSTICE SOLFISBURG delivered the opinion of the court.

These are appeals, consolidated by order of this Court, from two judgments entered in favor of plaintiffs, Jeannette Marquardt and Theodore Marquardt, upon a verdict of a jury in the Circuit Court of McHenry County, Illinois. The verdict and judgment entered in favor of plaintiff, Jeannette Marquardt, was in the sum of Sixty Thousand Dollars ($60,000) for a loss of a leg, which was sustained when a car belonging to Anthony Orlowski, not now a party to these proceedings, went out of control and rolled down a hill and into plaintiff while she was picnicking on the grounds of the Fox River Picnic Grove owned and operated by the defendants, Louis Cernocky and Clara Cernocky, his wife. The verdict and judgment in favor of Theodore Marquardt, husband of plaintiff, Jeannette Marquardt, was in the amount of Five Thousand Dollars ($5,000) for loss of consortium as a result of the same occurrence.

The complaint alleged the negligence of Anthony Orlowski, the owner of the car which went out of control, his wife and sister. The complaint further alleged the negligence of the defendants Cernocky in the operation of the Fox River Picnic Grove. On plaintiffs' motion Josephine Orlowski and Virginia Orlowski were dismissed as parties defendant at the close of the plaintiffs' case. Verdicts and judgments were rendered against the defendant Anthony Orlowski and the defendants Cernocky. Anthony Orlowski composed his

differences after denial of his post-trial motion. No issue is raised on the pleadings. The defendants filed post-trial motions renewing their motions for directed verdicts made during trial and requesting the entry of judgments notwithstanding the verdicts. Motions for a new trial were not filed. Upon denial of these motions, these appeals followed.

Defendants urge that their post-trial motions should have been granted because, in their view, on the uncontroverted facts (1) the injuries received by Mrs. Marquardt were the result of a freak accident which could not reasonably have been anticipated by them and (2) the negligent act of defendant Anthony Orlowski in not properly braking his car and the act of his unattended four-year-old daughter in releasing the reverse gear thereby causing the car to careen downhill were independent efficient causes of the injuries, and no act or omission of these defendants was a proximate cause of such injuries.

Plaintiffs maintain that the trial court did not err because the question of defendants' negligence, the question of whether it proximately contributed to cause the accident and whether there was an independent, efficient intervening cause were matters upon which the judgment of reasonable men might differ and therefore were questions of fact properly submitted to the jury.

█ The question presented by these appeals is the rather narrow issue of whether there is any competent evidence, together with all reasonable inferences to be drawn therefrom, standing alone, taken with all its intendments most favorable to the plaintiffs, tending to prove the material elements of the plaintiffs' case and from which a jury might reasonably find for the plaintiffs and against defendants, Lindroth v. Walgreen Co., 407 Ill. 121, 130; Neering v. Illinois Cent. R. Co., 383 Ill. 366, 374, 375; McCullough v. Orcutt, 14

138

Ill.App.2d 513, 517; King v. Mid-State Freight Lines, 6 Ill.App.2d 159, 162.

 The principles applicable on such a motion are the same as are applicable on a motion for a directed verdict and are well settled, Neering v. Illinois Cent. R. Co., 383 Ill. 366. We are not concerned with the weight or credibility of the evidence. Reasonable inferences may be drawn by a jury from established facts, and a verdict may not be set aside merely because the jury could have drawn different inferences from the evidence. Only where there is a complete absence of probative facts to support the conclusion drawn by the jury is it reversible error to overrule a motion for judgment notwithstanding the verdict, King v. Mid-State Freight Lines, 6 Ill.App.2d 159, 163.

Defendants were the owners and operators of the Fox River Picnic Grove, a picnic ground along the banks of the Fox River, in the Village of Fox River Grove, Illinois. The tract was a private park consisting of 45 acres fenced on all sides except on the river side. The grounds consisted in part of rolling, wooded hills and in part of level ground. There were some 35 or more outdoor fireplaces, 400 picnic tables, a merry-go-round, children's concessions, a ball diamond, two stands, a bar operated on the premises and swimming facilities. Signs along the highway placed by defendants invited the public to the grounds.

The occurrence in question occurred about 1:30 P. M. on the 4th of July, 1955. The usual 4th of July crowd of picnickers were in attendance, the number estimated by one witness to be 5000 or 6000 in the level picnicking area and 100 people on the hill overlooking the picnicking area. Defendant Louis Cernocky testified that the people numbered "several thousand, I would say, well, a couple of thousand." Children were all around the park. Defendant Louis Cernocky testified there were 30 to 50 cars parked on the hill which

could be seen from his office. There was neither fence, guard rail, curbing, tree stumps nor logs between where these cars were parked on the upper level and where a sharp descent began.

The defendants made a charge of one dollar per automobile which was collected by an attendant, one Brady, at the entrance to the grove. Brady was the sole attendant on the grounds, and his duties were confined to taking money and issuing tickets. The defendants were both personally present throughout the day and saw the cars parked on the hill. The defendant Orlowski testified that he was told by Brady, the attendant at the gate, to park on the hill where the other cars were, and that Brady pointed to the place where he eventually parked. There were no directional parking signs, and no one was supervising or directing the parking of automobiles. One witness testified that at 11:00 A. M. on the day in question the level area along the road was filled with cars and patrons were told to park anywhere.

Both parties introduced into evidence photographs showing the tract, its terrain and foliage in the portion of the grove where the incident occurred. These photographs and the testimony of the witnesses reveal that the crest of the hill upon which the cars were parked was sloping or slanted and that the lower portion of the hill was steep. The hill, which was a substantial one and part of the natural condition of the terrain, measured 200 to 300 feet from the crest to the bottom.

Defendant Anthony Orlowski testified that after he got up the road and on the crest of the hill he parked his car, a Kaiser 1953 Hydromatic, on a flat patch of ground; that he turned off the ignition and put the car in reverse to hold it in place. There was a hand brake on the car but he did not use it and did not set it. One of the plaintiffs' witnesses, Wayne Just, described the parking level where the Kaiser was parked as resem-

140

bling the top of an inverted saucer and said the Kaiser was parked so its front was six feet from the crest of the hill. He said the land on which the Kaiser was parked was not level. Another of plaintiffs' witnesses, Charles Fiedler, testified that there was a slight slope where the automobile was parked. Defendant Anthony Orlowski testified further that his front wheels were at least a car length from the sharp descent of the hill and that he had closed the doors and taken the keys with him when he, his wife and his children arrived at the location and selected a picnic bench. They went swimming during the morning and after lunch the older girls had gone swimming again. Defendant Anthony Orlowski and his wife were playing canasta at the picnic table while their youngest daughter, Tony, was sleeping on a blanket on the ground. They placed the picnic table at 4 to 6 feet from the car and the blanket on which their four year old child, Tony, was sleeping, at 3 to 4 feet to the other side of the picnic table. Both the Orlowskis claimed they were watching the child constantly; however, about a minute after they had last looked at the child and noticed her sleeping, they heard a cry "A car is rolling." Orlowski glanced, noticed it was his car, ran to the crest and saw his daughter was inside and tried to open the door. When that failed, Orlowski tried to reach in through the left hand door to reach the steering wheel. In the meantime, Mrs. Orlowski had grabbed the rear bumper and was trying to hold the car back. Something knocked Orlowski out and Mrs. Orlowski was unable to hold on to the car. It careened down the hill in an irregular fashion finally smashing into Mrs. Marquardt, the plaintiff, who was picnicking with her group below and pinning her up against the bench which was crushed into a tree.

The gear lever was found to be in neutral after the occurrence.

The witness Fiedler testified that the keys were in the ignition lock when the car came to a stop at the bottom of the hill. The witness Just, the Town police officer who investigated the occurrence, testified that immediately after the occurrence the hand brake on the Orlowski car was found not to work—it had "no pull at all."

■ We conclude that there is competent evidence, together with all reasonable inferences to be drawn therefrom, standing alone, taken with all its intendments most favorable to the plaintiffs, tending to prove that the Cernockys' total failure to provide a safe parking place for the Orlowski automobile or to take any measures directed toward proper supervision, direction and control of auto parking by patrons on defendants' premises, proximately caused the injuries to the plaintiffs when the Orlowski car was caused to plunge down the hill.

■ The Cernockys operated the picnic area or recreation park as a business and to their patrons, including the plaintiffs, as business invitees, they owed a duty of reasonable care for their safety (Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, 157). With full knowledge of the conditions of the grove on the day in question and its occupancy by patrons and their automobiles, the defendants admittedly did nothing to supervise, direct or control the parking of automobiles on their premises or the use of the premises. There was only one attendant on the grounds, and his duty was to take a dollar from each car and give the operator a ticket. The defendant Louis Cernocky testified that there had been no grading or graveling in the area on the hill where cars were parked, that no barricades, logs, fencing or curbing were installed there to provide any parking facility at or near the crest of the hill where the cars were directed or permitted to park. The plaintiff, Mrs. Marquardt, entered the picnic grounds

with her family on the day in question and was generally directed and invited to the area at the base of the hill where the picnic tables and fireplaces were located. While there, the Orlowski car came down the hill at a rapid rate of speed, under the circumstances previously related, and crushed her against a picnic bench which was forced against a tree, resulting in the loss of her leg.

The applicable principles concerning proximate cause have been frequently stated by this court and other courts of review in Illinois.

In Neering v. Illinois Cent. R. Co., 383 Ill. 366, the court said, at pp. 380–381:

"What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act (Illinois Central Railroad Co. v. Oswald, 338 Ill. 270; Hartnett v. Boston Store of Chicago, 265 Ill. 331). An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (Illinois Central Railroad Co. v. Oswald, 338 Ill. 270; Pullman Palace Car Co. v. Laack, 143 Ill. 242.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (Wintersteen v. National Cooperage and Woodenware Co., 361 Ill. 95; Sycamore Preserve Works v. Chicago & Northwestern Railroad Co., 366 Ill. 11.) What is the proximate cause of an injury is

ordinarily a question of fact to be determined by a jury from a consideration of all the evidence. Phillabaum v. Lake Erie and Western Railroad, 315 Ill. 131.

"The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, efficient and intervening cause so that the negligence is not actionable is subject to the qualification that if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of the injury and he may be held liable notwithstanding the intervening cause. The intervening act of a third person does not necessarily relieve the author of an earlier negligent or wrongful act from responsibility when the intervening cause of an injury is of such nature as could reasonably have been anticipated, in which case the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause. Garibaldi & Cuneo v. O'Connor, 210 Ill. 284; Armour v. Golkowska, 202 Ill. 144."

It is undisputed that the parking of motor vehicles on hilly terrain in defendants' picnic grove was in no respect supervised, controlled or directed. No fences, barricades, guard rails, curbing, or logs provided a safety barrier. There was testimony that park patrons were told to park at the top of the high ground which sloped toward the level play and swimming area, which fact would only tend to render defendants more culpable in view of the absence of any safety barriers. There was evidence that patrons were given no directions as to where their cars should be parked, thereby permitting them to park in whatever manner they wished. The park was heavily patronized with holiday picnickers, many of whom were children. Defendants, fully aware of the condition of the terrain and the use of the grove on the day in question, did nothing to avert or prevent injury to plaintiffs with regard to

144

automobiles present in the park. The jury might reasonably find that the defendants could have reasonably foreseen the injuries to Mrs. Marquardt as a natural and probable consequence of their acts or omissions. We cannot say that the owner of a picnic grove, who charges admission and who directs or knowingly allows patrons to park on the top of a high inverted saucer-like hill, has kept the premises reasonably safe for his patrons when he admittedly has done nothing to keep such cars safely and securely parked. It is common knowledge that many operators of parking lots, particularly those located upon sloping ground, will place fence, logs, railroad ties, cement barriers, and the like to keep parked autos in a safe position. Defendants' parking area was on sloping ground near a steep hill or drop-off.

██ Defendants strenuously urge that the acts of Anthony Orlowski and his small daughter were independent efficient intervening causes of the plaintiff's injuries. However, the intervention of independent or intervening forces will not break the causal connection between a negligent act or omission if the intervention of such forces was itself probable or foreseeable, and it is not necessary that the person charged with negligence should have foreseen the precise injury which resulted from his act or failure to act, Johnston v. City of East Moline, 405 Ill. 460; Neering v. Illinois Cent. R. Co., 383 Ill. 366; King v. Mid-State Freight Lines, 6 Ill.App.2d 159. The intervening act of a third person does not necessarily relieve the author of an earlier negligent act from responsibility when the intervening cause of an injury is of such nature as could reasonably have been anticipated, in which case the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause or as a proximately contributing cause, Garibaldi & Cuneo v. O'Connor, 210 Ill. 284; Armour v. Golkow-

ska, 202 Ill. 144; Hansen v. Henrici's, Inc., 319 Ill. App. 458; Restatement, Torts, sec. 447. Proximate cause is ordinarily a question of fact, to be ascertained and settled by a jury from a consideration of all the evidence and attending circumstances. It can arise as a question of law only when the facts are not only undisputed but are of such a nature that there can be no difference in the judgment of reasonable men as to the inferences to be drawn therefrom, Phillabaum v. Lake Erie & W. R. Co., 315 Ill. 131; Manion v. Chicago, R. I. & P. Ry. Co., 12 Ill.App.2d 1; Gleason v. Cunningham, 316 Ill. App. 286.

Applying these principles to the evidence in this record, we conclude that a jury might reasonably find that defendants could have reasonably foreseen the injuries to Mrs. Marquardt as a natural and probable result of their total failure to take precautions with vehicles on their steeply sloping parking area. It is not necessary that the defendants should reasonably have foreseen the precise injury which resulted; it is enough if the exercise of reasonable foresight would have warned the defendants of danger to patrons from the uncontrolled movement of vehicles parked on the hill. Analysis is not aided by describing this occurrence as a "freak accident," as defendants do, since to do so merely assumes that it was in no manner foreseeable.

The Illinois cases relied upon by defendants are factually different from, and not analogous to, the instant case. In Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, the Supreme Court discussed the basic principles concerning foreseeability and intervening cause, but those principles did not furnish the basis for the court's holding in that case, which was that the trial court erred in failing to direct a verdict for the defendant since the plaintiff was guilty of contributory

negligence as a matter of law. In Merlo v. Public Service Co., 381 Ill. 300, Public Service Company was transmitting electric current in a part of Maywood, Illinois, through uninsulated high tension wires which the company had permitted to sag. A construction company was operating a crane adjacent to the power lines, and its operator permitted the boom to come in contact with the wires and pushed them into two W. P. A. workers who were electrocuted. After the jury awarded the plaintiffs verdicts, the trial court entered judgment notwithstanding the verdict in favor of the defendant Public Service Company and the Supreme Court affirmed those judgments. There is nothing to indicate that defendant had knowledge that cranes might be operating near the power lines, and the court understandably enough held that under the evidence the defendant could not reasonably have anticipated that a crane would be swung so high and in such a manner as to reach power lines located far above the parkway. In Berg v. New York Cent. R. Co., 391 Ill. 52, the train of the defendant railroad failed to sound its bell or whistle upon approaching the grade crossing where the plaintiff and his driver were approaching in an automobile. Both plaintiff and his driver saw the train in ample time to have stopped had it not been for the icy condition of the road at or near the crossing. Because of the icy highway, the auto struck the train, causing serious injury to plaintiff and his driver. The Appellate and Supreme Courts both concluded that a judgment notwithstanding the verdict should have been entered for the defendant railroad. Since the failure to sound the whistle or bell did not in any way cause or contribute to the collision, it is clear that the defendant was entitled to a judgment in its favor. That holding, however, does not assist defendants here on markedly different facts, where

there was a clear relation between the defendants' failure to act and the plaintiff's injuries. The defendants place considerable reliance on two decisions of the Court of Appeals of Georgia, Peggy Ann of Georgia, Inc. v. Scoggins, 86 Ga. App. 109, 71 S.E.2d 89, and Wright Contr. Co. v. Waller, 89 Ga. App. 827, 81 S.E.2d 541. Both of these appeals arose on demurrers to plaintiffs' complaints, so that the complaints were construed most strongly against the respective pleaders. In addition to being pleading cases, which this is not, we find upon reading that their facts readily distinguish them from the factual situation here.

The issues which defendants raise on these appeals were squarely jury questions and the record, which we have examined with care, leads us to conclude that no error was committed in denying defendants' motions for judgment notwithstanding the verdict. Therefore, the judgment of the Circuit Court of McHenry county is affirmed.

Affirmed.

CROW, P. J. and WRIGHT, J., concur.